UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------ X
                                :

FRANKLIN MARTICH,                 :

                                :

                     Petitioner,      :

                                :

      - against -                   :

                                :

SUPERINTENDENT JOSEPH T.     :
SMITH,                                :

                                :

                     Respondent.    :
------------------------------------------------------ X

SHIRA A. SCHEINDLIN, U.S.D.J.:

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 7/14/09

**OPINION AND ORDER**

**08 Civ. 6277 (SAS)**

## I.     INTRODUCTION

           Franklin Martich brings this petition for a writ of habeas corpus

pursuant to section 2254 of Title 28 of the United States Code ("section 2254").

Martich asserts three separate grounds for relief: (1) improper curtailment of a

cross-examination of a witness in violation of the Confrontation Clause;[1] (2)

violation of due process through the erroneous admission of expert witness

testimony; and (3) ineffective assistance of trial counsel.[2] For the reasons that

---

         [1]      U.S. Const. amend. VI. The Confrontation Clause "provides two types of protection for a criminal defendant: the right physically to face those who testify against him, and the right to conduct cross-examination." *Pennsylvania v. Ritchie*, 480 U.S. 39, 51 (1987).

         [2]      *See* Petition for a Writ of Habeas Corpus ("Pet.") at 5.

follow, Martich's petition is denied.

## II.    BACKGROUND

### A.    Pre-Trial Proceedings and Trial

In April 2001, Martich was charged with Sodomy in the First Degree (New York Penal Law ("Penal Law") section 130.50(3)), Sodomy in the Third Degree (Penal Law section 130.40(2)), Sexual Abuse in the First Degree (Penal Law section 130.65), six counts of Sexual Misconduct (Penal Law section 130.21(1)), five counts of Coercion in the First Degree (Penal Law section 135.65), three counts of Rape in the Second Degree (Penal Law section 130.30), two counts of Rape in the Third Degree (Penal Law section 130.25), Assault in the Second Degree (Penal Law sections 120.05(2), (9)), Assault in the Third Degree (Penal Law section 120.00(1)), Endangering the Welfare of a Child (Penal Law section 260.10(1)), Possession of Eavesdropping Devices (Penal Law section 250.10), and two counts of Eavesdropping (Penal Law section 250.05).[3]

These charges stemmed from a long-standing and abusive sexual relationship between Martich and his girlfriend's daughter, S.M.,[4] who is not his

---

[3]    *See* Memorandum of Law in Opposition to the Petition for a Writ of Habeas Corpus ("Opp. Mem.") at 1.

[4]    On December 2, 2008, this Court granted respondent Smith leave to place under seal the federal habeas corpus petition and copies of all state records,

2

biological child.[5] When S.M. was three or four years old, Martich began living with Paula M.[6] He began to sexually, physically and verbally abuse S.M. when she was ten years old.[7] Martich continued to engage in sexual intercourse with S.M. until his arrest in 2001.[8] Martich proceeded to trial on October 11, 2001.[9] Although Martich and S.M.'s mother, Paula M., never married, all of the trial witnesses referred to him as her "husband" and as S.M.'s "stepfather."[10]

During cross-examination of the People's primary witness, S.M., the trial judge sustained objections to questions regarding possible financial motives

_____

in order to protect the privacy of the sex offense victim pursuant to N.Y. Civ. Rights Law § 50-b. Accordingly, the Court will refer to the victim by her initials. *See* 12/1/08 Declaration in Support of Motion to File Under Seal.

[5]     *See* Trial Transcript at 47 for *The People of New York v. Franklin Martich*, Supreme Court, New York County (2001). Hereinafter, numerical references preceded by "Tr." refer to the corresponding page in the Trial Transcript.

[6]     *See* Tr. 48-49, 723-725.

[7]     *See* Tr. 50-51, 62-65, 109-113, 134-135, 190-191, 368-370, 754-759, 769-771.

[8]     *See* Tr. 66-68, 320-322. S.M. provided a detailed sequence of their sexual encounters in her trial testimony. *See generally,* Tr. 50-998.

[9]     *See* Opp. Mem. at 3.

[10]     *See generally* Tr.

3

underlying her allegations,[11] prior sexual conduct with an eighth-grade boy,[12] an

inconsistency in her trial testimony,[13] and her alleged drug use.[14]  Defense counsel

was later permitted to cross-examine Paula M. about matters related to possible

financial motives.[15]

       Dr. Jocelyn Brown, a pediatrician and expert in child sexual abuse,

---

[11]    *See id*. 386-387, 415, 425, 1738 (court barring defense counsel from questioning S.M. about an argument over an excessive phone bill and Martich's expulsion of S.M. from his home).

[12]    *See id*. 462 (court limiting defense counsel to questions about S.M.'s sexual past in relation to Martich only and no one else pursuant to the New York Rape Shield Law (N.Y. C.P.L. § 60.42)).

[13]    *See* Pet. at 55.  Although S.M. testified on direct that Martich attempted anal sex with her several times, she testified on cross-examination that she had told a detective that they never had anal sex.  *See* Tr. 175, 431.  Defense counsel attempted to argue that her history of anal sex with Martich was fabricated based on a sexual incident in which an eighth-grade boy "asked [her] for anal sex, but she would not let him." *See id*. 462.  The court ruled, however, that defense counsel could not cross-examine her any further about the incident. *See id*. 465.  S.M. later explained that she did not know whether or not attempted sex qualified as actual sex. *See id*. 327-329, 431-432, 452-453, 467-470.

[14]    In a side bar conference, defense counsel agreed with the trial court that pursuant to the Rape Shield Law, he could not ask questions regarding S.M.'s alleged drug use. *See* Tr. 1691-1692.

[15]    Counsel asked questions regarding her family's expenses and spending habits, access to Martich's income, and interest in real estate that Martich owned in Florida. *See id*. 1611-1613.

also testified for the People.[16]  Over defense objection, she stated that S.M. had

told her that she had been "sexually abused by her stepfather" and that "she never

had sex with anyone else."[17]  Defense counsel moved for a mistrial, claiming that

the doctor had acted as the "fact-finder for the jury."[18]  The court denied the

motion.[19]

After the defense rested, defense counsel addressed medical records

that the People had introduced into evidence.[20]  Noting that some of these records

referenced a discussion between S.M. and her mother over a possible civil lawsuit

following the conclusion of the criminal case,[21] defense counsel asked to recall

---

[16]     *See id.* 1199.  Dr. Brown also testified that she performed a medical
examination on S.M. that revealed a physical symptom of sexual abuse. *See* Tr.
1226-1231 (Dr. Brown explaining that S.M. had a gap in her hymen that sexually
abused children typically display, although she could not determine who caused it
or when it had occurred).

[17]     *See id.* 1209, 1219-1220.

[18]     *See id.* 1240-1242.

[19]     *See id.*

[20]     *See id.* 1684.  As part of their case, the People also submitted
audiocassette recordings of telephone conversations between S.M. and Martich, in
which Martich made graphic references to an ongoing sexual relationship between
them. *See id.* 287-289.

[21]     *See* Tr. 1686.

5

Paula M. as a witness.[22]  The court denied this request because "counsel had three days to cross-examine her and did not ask the question."[23]  In summation, defense counsel argued that the admitted medical records indicated financial motives for S.M. and her mother underlying S.M.'s allegations of sexual abuse.[24]

On November 5, 2001, the jury returned a verdict convicting Martich of all charges except one count of assault in the second degree and one count of assault in the third degree.[25]  On November 19, 2001, after stating that "[t]here is no question that [petitioner] did commit these crimes," and that "the record is replete with all kind of viciousness and evil," the court sentenced him to twenty-five to fifty years in prison.[26]

### B.    Post-Trial Proceedings

On appeal, Martich raised the following issues, *inter alia*,[27] to the

---

[22]    *See id*. 1705.

[23]    *Id*. 1706.

[24]    *See id*. 1736-1737.

[25]    *See id*. 1968-1974.

[26]    *See* Sentencing Transcript at 16-20.

[27]    Martich also raised claims that the prosecutor's summation was improper and that his sentence was excessive.  He does not bring these claims before this Court.

6

Appellate Division, First Department: (1) the trial court improperly curtailed

S.M.'s cross-examination and thereby deprived Martich of the opportunity to

impeach S.M.'s credibility and cast doubt on her version of events;[28] (2) the trial

court erred by qualifying Dr. Brown "as an expert witness in the field of child

sexual abuse" and then permitting her "to give wholly improper testimony that

consisted of inadmissible hearsay," which "did little more than repeat the most

damaging aspects of the complainant's direct examination with the added

imprimatur of expertise . . ."[29]; and (3) defense counsel was ineffective because,

based on his misunderstanding of the Rape Shield Law, he failed to cross-examine

S.M. regarding her alleged drug use and her alleged past sexual conduct with

others.  In further support of the last claim, Martich also alleged that because of

his counsel's lack of familiarity with the relevant medical records, counsel was

ineffective by failing to cross-examine S.M. and her mother regarding their alleged

financial interests in a civil lawsuit against Martich.[30]  The People filed an

---

[28]     *See* Pet. at 56.

[29]     Petitioner's Brief on Direct Appeal to the Appellate Division
("Appeal Br."), Ex. A to Declaration of Paul Lyons, Respondent's Counsel,
Supporting Respondent's Opposition to the Petition for a Writ of Habeas Corpus
("Smith Dec."), at 67-72.

[30]     *See* Appeal Br. at 46-54.

7

opposition brief in response to these claims.[31]

      In June 2006, the Appellate Division unanimously affirmed Martich's conviction.[32] The court held that Martich "failed to preserve his argument" that the trial court improperly curtailed S.M.'s cross-examination because "[e]ach time the court sustained an objection . . . [defense] counsel simply moved on without making an offer of proof or other argument."[33] The court held, in the alternative, that were it to review the claim, it would find that the trial court "properly exercised its discretion in limiting cumulative and argumentative questioning, or questioning calling for inadmissible hearsay, and that defendant received a full opportunity to cross-examine the witness."[34]

      As to Martich's claim regarding Dr. Brown's testimony, the court held that "[t]he People's expert's brief narration of the history [she] had taken from the victim was properly admitted to explain the basis of her opinion," and that because Dr. Brown "offered no opinion on the victim's truthfulness," and "[S.M.] was subject to cross-examination, no Confrontation Clause issue [was]

---

[31]    *See* The People's Brief in Opposition on Direct Appeal, Ex. B to Smith Dec.

[32]    *See People v. Martich*, 818 N.Y.S.2d 48 (1st Dep't 2006).

[33]    *Id.* at 49.

[34]    *Id* (citations omitted).

8

presented."[35]

Finally, the court held that Martich's ineffective assistance claim was not reviewable on direct appeal because it involved "strategic choices of counsel."[36]  The court found that, "[o]n the existing record, to the extent it permits review," Martich "failed to demonstrate he did not receive effective assistance under the state and federal standards."[37]  Further, the court held that the "existing record does not establish that counsel misunderstood the Rape Shield Law or that he lacked familiarity with the victim's medical records."[38]

In July 2006, Martich sought leave to appeal to the New York Court of Appeals.[39]  The Court of Appeals denied leave on October 25, 2006.[40]

### C.    Section 440 Proceedings

On December 14, 2006, Martich filed a motion with the trial court pursuant to New York Criminal Procedure Law ("N.Y.C.P.L.") section 440.10

---

[35]     *Id.* at 50.

[36]     *Id*.

[37]     *Id*.

[38]     *Id.*

[39]     *See* 8/12/06 Letter from Petitioner to N.Y. Court of Appeals, Ex. D to Smith Dec.

[40]     *See* 10/25/06 N.Y. Court of Appeals Certificate Denying Leave to Appeal, Ex. G. to Smith Dec.

seeking to vacate his conviction.[41]   Martich repeated the arguments he asserted on direct appeal.[42]

Martich offered no new evidence in support of the first two grounds – counsel's failure to cross-examine S.M. regarding her drug use and prior sexual conduct.  In support of the third ground – that counsel should have inquired into S.M.'s and her mother's interest in a possible civil lawsuit against him – he offered evidence that in 2002, after his trial and sentencing, an attorney sent a letter to him in prison stating that "your wife . . . informed us that she would like to have the property you have in Florida transferred to the children for their benefit.  Please let me know if you agree with this."[43]  His defense counsel, Andres

---

[41]   *See* Petitioner's Motion Filed with the Trial Court to Vacate His Conviction Pursuant to N.Y. C.P.L. § 440.10 ("Mot. to Vacate"), Ex. H to Smith Dec.  Martich also claimed that counsel "failed to prepare [petitioner] or any of his witnesses prior to their court testimony, never discussed or detailed the trial evidence for Martich, and never discussed the maximum or minimum sentences that he could receive prior to his sentence." *See id.* at 38-39, 51-61.  He does not raise these claims before this Court.

[42]   Martich reasserted that:  (1) counsel misunderstood the Rape Shield Law and consequently failed to cross-examine S.M. regarding her alleged drug use; (2) counsel failed to cross-examine S.M. about her past sexual conduct to rebut her statement to Dr. Brown that she only had sex with Martich; and (3) counsel failed to examine both S.M. and her mother regarding their alleged interest in a civil lawsuit against Martich. *See id.* at 38, 40-50.

[43]   *See* Affidavit of Frank Martich, Ex. 2 to Mot. to Vacate, ¶ 9; Department of Corrections Visitor Registrant Listing for Flor Camarena, Ex. 10 to Mot. to Vacate, at 38; Letter from Davila & Torres Law Firm to Frank Martich,

M. Aranda, submitted an affidavit [44] describing his legal strategies at the trial to

rebut Martich's claim of ineffective assistance.[45]

On June 25, 2007, the court denied Martich's section 440.10

motion,[46] relying "on [the] trial record and the parties' submissions," to find that

Martich "failed to establish that he was denied effective assistance of counsel."[47]

The court held that the three grounds had been raised on direct appeal and rejected

by the Appellate Division.[48]  Because Martich "add[ed] no new substance" to his

claims and failed to "indicate how any evidence adduced at a hearing would

change the appellate assessment of his claim,"[49] the court denied his section

---

Ex. 11 to Mot. to Vacate, at 40-50.

[44]     *See* Affirmation of Andres M. Aranda ("Aranda Aff."), Ex. A to
People's Aff.

[45]     *See* People's Brief Opposing N.Y. C.P.L. § 440.10 Motion, Ex. I to
Smith Dec.; People's Affirmation Opposing N.Y. C.P.L. § 440.10 Motion
("People's Aff."), Ex. J to Smith Dec.; People's Exhibits Opposing N.Y. C.P.L. §
440.10 Motion, Ex. K to Smith Dec.

[46]     N.Y. C.P.L. § 440.10(2)(a) provides that "the court must deny a
motion to vacate a judgment when . . . [t]he ground or issue raised upon the
motion was previously determined on the merits upon an appeal from the
judgment . . . ."

[47]     Trial Court's Decision Denying N.Y. C.P.L. §440.10 Motion
("§440.10 Denial"), Ex. L to Smith Dec., at 3.

[48]     *See id.* at 1-2.

[49]     *See id.*

11

440.10 motion.[50]  In so ruling, the court stated that the "ground or issue raised

upon the motion was previously determined on the merits upon an appeal from the

judgment.["51] Martich sought leave from the Appellate Division to appeal the denial of the

section 440 motion.[52]  The Appellate Division denied his application on November

15, 2007.[53]

## III.   LEGAL STANDARD

### A.   Section 2254

#### 1.   Standard of Review

This petition is governed by the Antiterrorism and Effective Death

Penalty Act of 1996 (the "AEDPA").  The AEDPA provides that a federal court

---

[50]     *Id.*  The court also rejected the claim that "neither he nor his
witnesses were properly prepared for their testimony."  *Id.* at 2.  The court credited
Aranda's affidavit, "in which he detail[ed] his extensive preparation for this trial
and refute[d] the defendant's and his witnesses's claims."  *Id.*  The court found
that Aranda's "version of events is corroborated in the trial minutes which indicate
that he made offers of proof as to each witness, belying any claim that he did not
speak to them about their testimony."  *Id.*  The court also found that Martich
"fail[ed] to suggest how he might have done better with more or better
preparation."  *Id.*

[51]     *See* Decision of New York County Supreme Court, Ex. 3 to Pet.

[52]     *See* Petitioner's Notice of Motion Seeking a Certificate Granting
Leave to Appeal the Denial of the Defendant's C.P.L. § 440.10 Motion to the
Appellate Division, Ex. M to Smith Dec.

[53]     *See* Certificate Denying Leave, Ex. O to Smith Dec.

12

can grant a writ of habeas corpus to a state prisoner only if the state court's denial

of relief "was contrary to, or involved an unreasonable application of, clearly

established Federal law, as determined by the Supreme Court of the United

States."[54] A state-court decision is "contrary to" clearly established federal law in

the following instances:

> First, a state-court decision is contrary to this Court's
> precedent if the state court arrives at a conclusion opposite
> to that reached by this Court on a question of law. Second,
> a state-court decision is also contrary to this Court's
> precedent if the state court confronts facts that are
> materially indistinguishable from a relevant Supreme Court
> precedent and arrives at a result opposite to ours.[55]

With regard to the "unreasonable application" prong, the Supreme Court has stated

that:

> a state-court decision can involve an "unreasonable
> application" of this Court's clearly established precedent in
> two ways.    First, a state-court decision involves an
> unreasonable application of this Court's precedent if the
> state court identifies the correct governing legal rule from
> this Court's cases but unreasonably applies it to the facts of
> the particular state prisoner's case. Second, a state-court
> decision also involves an unreasonable application of this
> Court's precedent if the state court either unreasonably
> extends a legal principle from our precedent to a new
> context where it should not apply or unreasonably refuses

54   28 U.S.C. § 2254(d)(1).

55   *Williams v. Taylor,* 529 U.S. 362, 405 (2000).

13

to extend that principle to a new context where it should apply.[56]

In order for a federal court to find a state court's application of Supreme Court precedent to be unreasonable, the state court's decision must have been more than incorrect or erroneous: "[t]he state court's application of clearly established law must be objectively unreasonable."[57] This standard "'falls somewhere between merely erroneous and unreasonable to all reasonable jurists.'"[58] While the test requires "'[s]ome increment of incorrectness beyond error, . . . the increment need not be great; otherwise *habeas* relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence.'"[59] Thus, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.

---

[56]     *Id.* at 407.

[57]     *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003). *Accord Williams*, 529 U.S. at 409; *Harris v. Kuhlman*, 346 F.3d 330, 344 (2d Cir. 2003).

[58]     *Overton v. Newton*, 295 F.3d 270, 276 (2d Cir. 2002) (quoting *Jones v. Stinson*, 229 F.3d 112, 119 (2d Cir. 2000)).

[59]     *Jones,* 229 F.3d at 119 (quoting *Francis v. Stone*, 221 F.3d 100, 111 (2d Cir. 2000) (quotation marks and citations omitted)).

14

Rather, that application must also be unreasonable."[60]

### 2.   Exhaustion Requirement

Section 2254 provides that a habeas petition by a state prisoner may not be granted unless "the applicant has exhausted the remedies available in the courts of the State."[61]  In order to satisfy the exhaustion requirement, a prisoner must have "'fairly presented to an appropriate state court the same federal constitutional claim that he now urges upon the federal courts,'"[62] either in the form of "explicit constitutional arguments" or simply by "alleging facts that fall 'well within the mainstream of constitutional litigation.'"[63]

### 3.   Procedural Bar

Ordinarily, a federal habeas court may not reach the merits if the state court's rejection of a federal claim "rests on a state law ground that is independent of the federal question and adequate to support the judgment."[64]  To determine

---

[60]    *Williams*, 529 U.S. at 411.

[61]    28 U.S.C. § 2254(b)(1)(A).

[62]    *Turner v. Artuz*, 262 F.3d 118, 123 (2d Cir. 2001) (quoting *Klein v. Harris*, 667 F.2d 274, 282 (2d Cir. 1981)).

[63]    *Levine v. Commissioner of Corr. Servs.*, 44 F.3d 121, 124 (2d Cir. 1995) (quoting *Daye v. Attorney Gen.*, 696 F.2d 186, 192 (2d Cir. 1982) (en banc)).

[64]    *Coleman v. Thompson*, 501 U.S. 722, 722 (1991).

whether a state procedural bar is "adequate to support the judgment,"[65] a federal habeas court should look to whether "the state rule at issue . . . is firmly established and regularly followed."[66]  A procedural default will "bar federal habeas review of the federal claim, unless the . . . petitioner can show 'cause' for the default and 'prejudice attributable thereto,'" or demonstrate that "failure to consider the federal claim will result in a 'fundamental miscarriage of justice.'"[67]

The Second Circuit has used the following three guideposts in "'evaluat[ing] the state interest in a procedural rule against the circumstances of a particular case:'"[68]

> (1) whether the alleged procedural violation was actually relied on in the trial court, and whether perfect compliance with the state rule would have changed the trial court's decision; (2) whether state caselaw indicated that compliance with the rule was demanded in the specific circumstances presented; and (3) whether petitioner had "substantially complied" with the rule given "the realities of trial" . . . and, therefore, whether demanding whether perfect compliance with the rule would serve a legitimate

---

[65]    *Id.*

[66]    *Garvey v. Duncan*, 485 F.3d 709, 714 (2d Cir. 2007).

[67]    *Coleman*, 501 U.S. at 749-50 (citations omitted).

[68]    *Id.* (quoting *Lee v. Kemna*, 534 U.S. 362, 387-88 (2002)). *Accord Monroe v. Kuhlman*, 433 F.3d 236, 245 (2d Cir. 2006).

governmental interest.[69]

The Second Circuit also emphasized that "the adequacy of a state procedural bar is determined with reference to the 'particular application' of the rule; it is not enough that the rule 'generally serves a legitimate state interest.'"[70]

Although only a "firmly established and regularly followed state practice" may be deemed adequate to prevent subsequent habeas review by this Court,[71] New York's "contemporaneous objection" rule – that a defendant's challenge to a court's limitation on cross-examination is waived for purposes of appeal by defendant's failure to place on the record an explanation of the relevance and materiality of the proposed lines of inquiry – has been recognized as a firmly established and regularly followed rule.[72]

Additionally, when a state court expressly says that a claim is "not preserved for appellate review" and then rules "in any event" on the merits, a

---

[69]     *Cotto v. Herbert*, 331 F.3d 217, 240 (2003) (quoting *Lee*, 534 U.S. at 381-85).

[70]     *Id.* (quoting *Lee*, 534 U.S. at 387).

[71]     *James v. Kentucky*, 466 U.S. 341, 348-49 (1984).

[72]     *See, e.g., Cheng Ng v. Gladwin*, No. 94 Civ. 4835, 1996 WL 337286, at *27-29 (S.D.N.Y. Feb. 6, 1996) ("Petitioner is mistaken in her contention that the mere preclusion of examination of a witness or of proffered evidence suffices to preserve claims for appellate review under § 470.05(2) and that it is not necessary to object or protest or otherwise indicate in some fashion the ground for an objection after the court precludes a question or denies a proffer").

federal court is barred from reviewing the claim.[73]

### 4.    Harmless Error Analysis

In order to obtain habeas relief, a petitioner must demonstrate that any constitutional error "had substantial and injurious effect or influence in determining the jury's verdict," and that the error resulted in "actual prejudice."[74] If a trial judge improperly admits evidence or testimony, such an error may be deemed "harmless" if the reviewing court finds that the evidence against the petitioner was not necessarily overwhelming, but only "weighty."[75]

### a.    Evidentiary Errors

To prevail on a claim that an evidentiary error deprived the defendant of due process, he must show that the error was so pervasive as to have denied him a fundamentally fair trial."[76] "It necessarily follows that if the omitted evidence creates a reasonable doubt that did not otherwise exist, constitutional error has been committed."[77]

---

[73]    *Glenn v. Bartlett*, 98 F.3d 721, 725 (2d Cir. 1996).

[74]    *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (quotation marks omitted).

[75]    *See Samuels v. Mann*, 13 F.3d at 527-28, 526 (2d Cir. 1993).

[76]    *Collins v. Smith*, 755 F.2d 16, 18 (2d Cir. 1985) (citing *United States v. Agurs*, 427 U.S. 97, 108 (1976)).

[77]    *Taylor v. Curry*, 708 F. 2d 886, 891 (2d Cir. 1983).

18

Under New York law, "the trial court is granted broad discretion in making evidentiary rulings precluding or admitting . . . evidence and, absent an abuse of discretion, a trial court's decision should not be disturbed on appeal."[78] Accordingly, trial judges retain wide latitude to impose reasonable limits on cross-examinations.[79]

The standard for claims of improper admission of testimony is "whether the erroneously admitted evidence, viewed objectively in light of the entire record before the jury, was sufficiently material to provide the basis for conviction or to remove a reasonable doubt that would have existed on the record without it.  In short, it must have been 'crucial, critical, highly significant.'"[80]

### b.    Confrontation Clause

Confrontation Clause violations are subject to the same "harmless error" analysis as evidentiary errors.[81]  The Confrontation Clause is violated when a petitioner is "prohibited from engaging in otherwise appropriate cross-

---

[78]    *People v. Aska*, 91 N.Y.2d 979, 981 (1998).

[79]    *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986).

[80]    *Collins v. Scully*, 755 F.2d 16, 19 (2d Cir. 1985) (quoting *Nettles v. Wainwright*, 677 F.2d 410, 414-15 (5th Cir. 1982)).

[81]    *See United States v. Dhinsa*, 243 F.3d 635, 649, 656 (2d Cir. 2001). *See also Davis v. Washington*, 547 U.S. 813, 829 (2004) (affirming ruling that testimony that is "harmless beyond a reasonable doubt" is admissible).

examination designed . . . to expose to the jury the facts from which jurors . . . could appropriately draw inferences relating to the reliability of the witness."[82] However, "'the Confrontation Clause guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish.'"[83] This right is not absolute, and it "may, in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process."[84]

To determine whether a Confrontation Clause violation is a harmless error, federal courts examine "many factors, including 'the importance of the witness's testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the witness on material points, the extent of cross-examination otherwise permitted, and of course, the overall strength of the prosecution's case.'"[85]

### 5.   **Ineffective Assistance of Counsel**

The Sixth Amendment provides that a criminal defendant "shall enjoy

---

[82]    *Van Arsdall*, 475 U.S. at 680 (citation and quotation marks omitted).

[83]    *Id.* at 683 (quoting *Delaware v. Fensterer,* 474 U.S. 15, 20 (1985) (*per curiam*) (emphasis in original)).

[84]    *Rock v. Arkansas*, 483 U.S. 44, 55 (1987).

[85]    *Gutierrez v. McGinnis*, 389 F.3d 300, 308 (2d Cir. 2004) (quoting *Van Arsdall*, 475 U.S. at 684).

the right . . . to have the Assistance of Counsel for his defence."[86]  Included in this

guarantee is the right to effective assistance of counsel.[87]  A petitioner claiming

ineffective assistance of counsel must prove both:  (1) that counsel's

representation "fell below an objective standard of reasonableness" measured

under "prevailing professional norms," and (2) that "there is a reasonable

probability that, but for counsel's unprofessional errors, the result of the

proceeding would have been different."[88]

There is a "strong presumption that counsel's conduct falls within the

wide range of reasonable professional assistance," and courts must "judge the

reasonableness of counsel's challenged conduct on the facts of the particular

case."[89]  A defendant "must overcome the presumption that, under the

circumstances, the challenged action 'might be considered sound trial strategy.'"[90]

"[S]trategic choices made after thorough investigation of laws and facts relevant to

---

[86]      U.S. Const. amend. VI.

[87]      *See McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970)
(collecting cases).

[88]      *Strickland v. Washington,* 466 U.S. at 688, 694 (1984).

[89]      *Id*. at 689-90.

[90]      *Id.* at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)).

plausible options are virtually unchallengeable."[91]

### 5. The New York Rape Shield Law

The Rape Shield Law gives a trial judge broad discretion to limit examination regarding a victim's prior sexual conduct when the evidence would be more prejudicial than probative.[92]

## V.  DISCUSSION

### A.  Exhaustion

Based on the criteria set forth above, Martich has exhausted all grounds for relief by previously raising them in federal constitutional terms to the state courts with no further appeal available.[93]

### B.  Partial Procedural Bar of the Improper Curtailment Claim

The claim that the trial court improperly curtailed cross-examination of S.M. is procedurally barred, in part. Because Martich failed to comply with New York State's contemporaneous objection rule, which requires defense counsel to place on the record an explanation of the relevance and materiality of a proposed line of cross-examination, Martich's procedural default bars federal

---

[91]     *Id.* at 690.

[92]     *See* N.Y. C.P.L. § 60.42.

[93]     It is undisputed that Martich has fully exhausted all of his claims. *See* Opp. Mem. at 29-30; Pet. at 6.

habeas review of this part of the claim.[94]

Applying the contemporaneous objection rule to this case satisfies the three *Cotto v. Herbert* factors.[95] *First*, "[i]t is . . . meaningless to ask whether the alleged procedural violation was actually relied on in the trial court – the violation only first occurred when defendant raised an argument on appeal that he had not raised earlier."[96] Martich's "failure to make an offer of proof or otherwise protest the ruling was 'actually relied on' by the trial court because the trial court was never given occasion to reconsider its decision to sustain the prosecutor's objection. It is at least possible that a proffer as to the testimony [the witness] would give, and the reasons for its relevance, might have caused the trial court to reverse its ruling."[97] *Second*, the "requirement of an offer of proof has been consistently applied by New York Courts."[98] *Third*, Martich did not "substantially comply" with the procedural rule. Martich claims that by continuing to cross-

---

[94]    *See King v. Greiner*, No. 02 Civ. 5810, 2008 WL 4410109, at *86-93 (S.D.N.Y. Sept. 26, 2008).

[95]    *See* 331 F.3d 217, 240 (2d Cir. 2003).

[96]    *Garvey v. Duncan*, 485 F.3d 709, 719 (2d Cir. 2007).

[97]    *Rivera v. Miller*, No. 05 Civ. 4048, 2006 WL 3230293, at *39 (S.D.N.Y. Nov. 7, 2006).

[98]    *Id.* at *40-42. *Accord People v. George,* 67 N.Y.2d 817, 818-19 (1986).

23

examine S.M. in the face of sustained objections, he apprised the trial court of the basis of his questions. Yet, he offers no support for this view.[99]

Finally, Martich has not shown cause, undue prejudice or the potential for a "fundamental miscarriage of justice."[100] Although Martich has asserted a claim of ineffectiveness of trial counsel, he has not squarely asserted a claim that counsel was ineffective for failing to object to the curtailment of S.M.'s cross-examination.[101] There is also no evidence of prejudice because Martich was still able to establish a defense theory of possible financial motives underlying S.M.'s allegations.[102] Finally, Martich has not established a fundamental miscarriage of justice, such as a proffer of evidence that he was actually innocent of the crime.[103]

---

[99]     *See, e.g., Cheng Ng*, 1996 WL 337286, at *28-29 (noting that it is necessary to provide grounds for an objection to preserve a claim for appellate review).

[100]     *Coleman*, 501 U.S. at 749-50 (citations omitted).

[101]     *See* Pet. at 50 n.11. *Cf. Harden v. LaClaire*, No. 07 Civ. 4592, 2008 WL 4735231, at *38-39 (S.D.N.Y. Mar. 26, 2008) ("ineffective assistance of counsel cannot constitute cause for the petitioner's default here because this particular ground of ineffective assistance was itself defaulted").

[102]     *See* Tr. 939-972. Aranda also established through Martich's testimony that Paula M. drained $6,000 from his bank account immediately after his arrest. *See id.* 1611-1613.

[103]     *See Schlup v. Delo*, 513 U.S. 298, 324 (1995).

Thus, the claim that S.M.'s cross-examination was wrongfully curtailed regarding financial motives is procedurally barred.

## C.  The Remaining Improper Curtailment Claim

The Appellate Division had stated, in the alternative, that "the court properly exercised its discretion in limiting cumulative and argumentative questioning, or questioning calling for inadmissible hearsay, and that defendant received a full opportunity to cross-examine the witness."[104]  Because the Appellate Division ultimately denied Martich's section 440.10 motion on the merits,[105] the preclusion of cross-examination on the remaining issues did not violate the Confrontation Clause.  Accordingly, Martich's ground for habeas relief on the remaining improper curtailment claim is dismissed.

## D.  Improper Admission of Expert Witness Testimony

The Appellate Division's decision that the trial court properly admitted Dr. Brown's testimony was neither contrary to, nor an unreasonable application of, Supreme Court law, as the decision did not violate due process.

In this case, the evidence that Martich sexually abused S.M. was

---

[104]    *People v. Martich*, 818 N.Y.S.2d at 49 (citations omitted).

[105]    *See* Certificate Denying Leave.

weighty.[106]  Although S.M. was the only witness who testified to their sexual

relationship, recorded phone conversations confirmed the abusive and sexual

nature of their relationship.[107]  The testimonies of S.M.'s mother and sister also

supported S.M.'s overall account of Martich's violent and controlling way towards

her.

Even if Dr. Brown's testimony was erroneously admitted, it was

insufficiently material to provide the basis for the conviction when viewed

objectively in light of the entire record before the jury.  In light of the

aforementioned weighty evidence,[108] her expert testimony was not crucial, critical

or highly significant and did not "result in 'actual prejudice'" to petitioner.[109]

Accordingly, habeas relief on this ground is denied.

---

[106]    S.M. testified that she and Martich repeatedly engaged in sexual acts
between the time she was ten and seventeen years old.  She also testified that he
compelled her to do these acts by threatening her with physical injury if she did
not agree.  *See* Tr. 133.

[107]    Martich told S.M. that he was "in love with [her]" and made graphic
references to their sexual relationship.  *See* Opp. Mem. at 15-16; *see also* People's
Exhibit 14 [audiotape].

[108]    *Brecht*, 507 U.S. at 637.

[109]    *See, e.g., United States v. Santiago*, 126 Fed. App'x 21, 23 (2d Cir.
2005) (admission of testimony was harmless error where defendant's "guilt was
supported by an overwhelming amount of evidence" of victim testimony, physical
evidence and recorded conversations).

26

## C.   Ineffective Assistance of Trial Counsel[110]

*First*, defense counsel did not err by failing to question S.M. about her alleged drug use. The omission of such questions was not due to a misunderstanding of the Rape Shield Law, as Martich alleges, but because Aranda "did not have a good-faith basis" to ask such questions.[111]  Because the drug allegations were based on "hearsay statements made by unidentified sources,"[112] Aranda's failure to question on this issue was not ineffective.[113]

*Second,* counsel properly construed the Rape Shield Law by

---

[110]    Martich also cites Aranda's suspensions from the practice of law prior to and subsequent to his sentencing to support his ineffective counsel. *See* Pet. at 33.  The Second Circuit has held that the fact that counsel was suspended from practice before the court in which defendant was sentenced did not render counsel ineffective. *See Guerrero v. United States*, 186 F.3d 275 (2d Cir. 1999).  The Second Circuit finds a *per se* violation of the Sixth Amendment in only two situations: when, unknown to the defendant, counsel was, at the time of representation, "(1) not duly licensed to practice law because of a failure to ever meet the substantive requirements for the practice of law, . . . or (2) implicated in the defendant's crimes." *Bellamy v. Cogdell*, 974 F.2d 302, 306 (2d Cir. 1992) (internal citations omitted).  The instant case falls into neither category.

[111]    Aranda conceded that his knowledge of her alleged drug use was based on hearsay and concerned events that occurred after the charges were filed. *See* Aranda Aff. ¶ 29.

[112]    *United States v. Concepcion*, 983 F.2d 369, 392 (2d Cir. 1992).

[113]    *Cf. United States v. Arena*, 180 F.3d 380, 396 (2d Cir. 1999) (holding that failure to make a meritless argument does not amount to ineffective assistance).

27

excluding inquiry into S.M.'s sexual history with an eighth-grade boy.[114]  Pursuant

to the Rape Shield Law, questions regarding a victim's sexual history with

individuals other than the defendant are collateral and not an appropriate subject

of cross-examination.[115]  Accordingly, defense counsel followed the dictates of the

Rape Shield Law in not questioning S.M. about her sexual history.

*Third,* Martich's argument that defense counsel failed to familiarize

himself with S.M.'s medical records and inadequately questioned S.M. and her

mother about their financial motives is patently meritless.[116]  Defense counsel was

familiar with the content of the medical records[117] but "decided tactically"[118] to

"argue from [the records] on summation."[119] This reasonable strategic decision to

---

[114]     *See People v. Mathews*, 643 N.Y.S.2d 851, (4th Dep't 1996)
(rejecting "defendant's contention that County Court improperly limited cross-
examination of a prosecution witness regarding sexual activity between the
complainant, age ten, and individuals other than defendant," as "[t]hat evidence
[was] irrelevant to the issue whether defendant had sexual intercourse with the
complainant and [was] not otherwise admissible under CPL § 60.42").

[115]     *See* N.Y. Rape Shield Law.

[116]     *See* Pet. at 35-49.

[117]     Aranda referred to the medical records in his cross-examination of
S.M.  *See* Tr. 327-333, 432, 442, 459-460.  The Appellate Division found that
"[t]he existing record does not establish that counsel . . . lacked familiarity with
the victim's medical records."  *People v. Martich*, 818 N.Y.S.2d at 49-50.

[118]     Aranda Aff. ¶ 30.

[119]     *See id.*

28

discuss the records on summation rather than on cross-examination caused no prejudice to Martich.

In sum, it cannot be said that defense counsel's performance was objectively unreasonable under prevailing professional norms.  Therefore, the Appellate Division's finding that Martich "failed to demonstrate that he did not receive effective assistance"[120] was neither contrary to, nor an unreasonable application of, *Strickland*.  Accordingly, Martich's last ground for habeas relief is rejected.

### F.  Certificate of Appealability

A district court may grant a certificate of appealability allowing a habeas petitioner to appeal the denial of his petition with respect to any of petitioner's claims only if he makes a substantial showing of the denial of a constitutional right.[121]  A substantial showing only requires that a petitioner demonstrate that "reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were

---

[120]    Decision and Order of the Appellate Division, 5.

[121]    *See* 28 U.S.C. § 2253(c)(2).  *See also Miller-El v. Cockrell*, 537 U.S. 322 (2003).

'adequate to deserve encouragement to proceed further.'"[122]  Martich has not made

such a showing in this case.  Accordingly, this Court declines to issue a certificate

of appealability.

## V.  CONCLUSION

For the foregoing reasons, Martich's petition for a writ of habeas

corpus is denied.  The Clerk of the Court is directed to dismiss the petition and

close this case.

SO ORDERED:

_____

Shira A. Scheindlin
U.S.D.J.

Dated:   New York, New York
         July 13, 2009

---

[122]   *Rhagi v. Artuz*, 309 F.3d 103, 106 (2d Cir. 2002) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quotation marks and citation omitted)).